UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#51-53
JS-6(lc)

## CIVIL MINUTES - GENERAL

| Case No. | CV 11 - 9811 PSG (Ex) | Date | April 23, 2013 |
|---|---|---|---|
| Title | *Garcia v. Allergan Inc.* | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| | Wendy Hernandez | Not Reported |
| | Deputy Clerk | Court Reporter / Recorder |
| | Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| | Not Present | Not Present |

**Proceedings:** (In Chambers): Order GRANTING final approval of Class Action Settlement

I. Background

At issue is the final settlement of a class action against Defendant Allergan, Inc. ("Defendant" or "Allergan"). On November 28, 2011, Plaintiff Julio Garcia ("Plaintiff") filed a Class Action Complaint against Defendant bringing causes of action for false advertising, pursuant to California's False Advertising Law ("FAL"), California Business & Professions Code § 17500, and unfair competition, pursuant to California's Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200, *et seq.*, relating to Allergan's promotion of its product BOTOX® Cosmetic ("Botox Cosmetic"). *See* Dkt. # 1. Plaintiff alleges that Defendant advertised to physicians and health care providers that one vial of Botox Cosmetic could be used for multiple patients despite its knowledge that such use was not approved by the Food and Drug Administration ("FDA"), was unsafe, and could cause physicians to lose their medical licenses. *Compl.* ¶ 46. Plaintiff brought the claims on behalf of a class of all physicians and health care providers in the United States who purchased Botox Cosmetic from Allergan or Allergan-authorized distributors from April 15, 2002 through the date of preliminary approval. Defendant denies that it has engaged in any wrongdoing whatsoever, denies all allegations in Plaintiff's Complaint, and denies all liability. *Mot.* 15:11-12.

This action was previously brought by a different plaintiff, Ivan Goldsmith, in *Goldsmith v. Allergan, Inc.*, No. 09-cv-7088-PSG (Ex). *Goldsmith* was based on the same alleged conduct of wrongfully representing that a single vial of Botox Cosmetic could be used for multiple patients and procedures, *see Goldsmith* Dkt. # 1, and Goldsmith was represented by the same counsel that are now representing Plaintiff in the present action—Finkelstein Thompson LLP, Kirkland and Packard LLP, and the Sill Law Group, PLCC (collectively, "Class Counsel").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#51-53
JS-6(lc)

## CIVIL MINUTES - GENERAL

| Case No. | CV 11 - 9811 PSG (Ex) | Date | April 23, 2013 |
|---|---|---|---|
| Title | *Garcia v. Allergan Inc.* | | |

Class Counsel litigated *Goldsmith* for over two years, from when the *Goldsmith* Complaint was filed on September 29, 2009 until they withdrew as counsel on January 4, 2012. *See Goldsmith* Dkts. # 114, 119. In May 2011, in connection with the *Goldsmith* action, the parties attended a 12-hour mediation session with retired Judge Layn Phillips ("Judge Phillips"). *Rivas Decl.* ¶¶ 30-32. That mediation ultimately did not result in a settlement agreement because Plaintiff subsequently advised Class Counsel that he planned to opt out of any class settlement in order to pursue his claims individually and terminated Class Counsel. *Id.* ¶¶ 33-34.

After Goldmith withdrew from the action, Class Counsel filed the present action with Plaintiff as the class representative. *Id.* ¶ 35. In April 2012, in connection with the present action, the parties attended a second mediation with Judge Phillips. *Id.* ¶ 36. In the April 2012 mediation, the parties reached a settlement in principle and subsequently exchanged drafts of settlement agreements, class notice, claim forms, and other related documents. *Id.* ¶¶ 37-39. The parties ultimately reached a Settlement Agreement ("Agreement").

On October 31, 2012, the parties filed a motion for an order (1) granting preliminary approval of the Agreement; (2) certifying the proposed class for settlement purposes; (3) approving the proposed form and method of notice; (4) directing that notice of the Agreement be given to the Class in the proposed form and manner; and (5) setting a final approval hearing. *See* Dkt. # 36. On January 9, 2013, the Court tentatively denied the motion for preliminary approval, noting several concerns with the Agreement. *See* Dkt. # 46. In response, the parties submitted a joint memorandum addressing the Court's concerns, *see* Dkt. # 47, and on January 31, 2013, the Court granted preliminary approval of the Agreement, *see* Dkt. # 48. Additionally, in approving the preliminary settlement, the Court ordered submission of the following: (1) confidential memoranda from both parties detailing their determination of the merits and value of the case, including evidence relied on in reaching this determination; (2) a memorandum justifying Plaintiff's counsel's award of attorneys' fees and costs, including an itemized billing statement showing hours worked, hourly rates, expenses incurred thus far, and expenses expected to be incurred in the future; (3) memorandum justifying Plaintiff's incentive award of $7,750, including a detailed description of his efforts in pursuit of the case; (4) attestations from all parties indicating that there are no separate deals and that the Agreement is the only agreement between the parties involved, as well as copies of any and all agreements reached between the parties related to the Agreement, including agreements involving the named plaintiff and agreements between opposing counsel; (5) attestations from all parties regarding any personal or business connections to the Aesthetic Surgery Education and Research Foundation, the National Endowment for Plastic Surgery, and/or the American Academy of Facial Plastic and Reconstructive Surgery as well as attestations from all attorneys representing the parties in this matter regarding any known personal or familial connection to these organizations. *See* Dkt.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#51-53
JS-6(lc)

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11 - 9811 PSG (Ex) | Date | April 23, 2013 |
|---|---|---|---|
| Title | *Garcia v. Allergan Inc.* | | |

# 48. On March 5, 2013, Plaintiff filed motions for final approval of the class action settlement, *see* Dkt. # 52, approval of Plaintiff's incentive award, *see* Dkt. # 51, and an award of attorneys' fees to Class Counsel, *see* Dkt. # 53.

II.   Legal Standard

A court may approve a class action settlement "only after a hearing and on finding that [the settlement] . . . is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C). In determining whether a settlement meets this standard, courts "balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

The district court must approve or reject the settlement as a whole. *See Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003); *Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). The Court may not delete, modify, or rewrite particular provisions of the settlement. *See id.* In reviewing the settlement, the district court is cognizant that the settlement "is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* at 1027.

III.   Summary of Settlement

   A.   Material Terms of the Settlement Agreement

*i.   Monetary Relief*

The proposed Agreement provides for a total settlement amount of $7.75 million. *Settlement Agreement* ¶ 48. Pursuant to the Agreement, Defendant deposited $7.75 million into an interest-bearing escrow account ("Settlement Fund") on February 14, 2013. *Rivas Decl.*, Ex. 6, ¶ 17 (*Affidavit of Andrew Beckord* (hereinafter "*Beckord Affidavit*")). In addition to paying claims to Class Members, the Settlement Fund may be used to pay for notice to the Class, administrative costs, fees to Class Counsel, and Plaintiff's incentive award of $7,750. *Settlement Agreement* ¶ 30. Any funds that are left in the account after payments to Class Members and expenses will be donated to The Aesthetic Surgery Education and Research Foundation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#51-53
JS-6(lc)

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11 - 9811 PSG (Ex) | Date | April 23, 2013 |
|---|---|---|---|
| Title | *Garcia v. Allergan Inc.* | | |

("Aesthetic Surgery Foundation") (25 percent); the National Endowment for Plastic Surgery ("National Endowment") (25 percent); and the American Academy of Facial Plastic and Reconstructive Surgery ("American Academy") (50 percent). *Settlement Agreement* ¶ 55. Defendant is not entitled to a reversion of any of the funds remaining in the account after distribution and payment of expenses. *Id.*

The amount each Class Member receives pursuant to the Agreement will be determined based on the Plan of Allocation. *Rivas Decl.*, Ex. 3 ¶ 1 (Plan of Allocation (hereinafter "Plan of Allocation")). The Settlement Fund will be distributed based on the average number of vials of Botox Cosmetic Class Members purchased in 2008, multiplied by a per vial amount. Plan of Allocation ¶ 2. Based on the number of Class Members who have submitted claims, Plaintiff estimates that each Class Member will receive between $228.12 and $160,368, depending on the number of vials they purchased on average per month in 2008. *Reply* 3:15-21.

      *ii.    Non-Monetary Relief*

In addition to monetary relief, the Agreement provides that Defendant will instruct its employees that they may not use "Botox Calculators." *Settlement Agreement* ¶ 56. Botox Calculators are a formula that Allergan uses to estimate how much profit physicians will make from the purchase and use of vials of Botox Cosmetic, but Plaintiff alleges that the calculator misrepresents to purchasers how much they will profit from the purchase and use of the vials. *Compl.* ¶¶ 82-83. Additionally, Defendant will instruct its personnel on the proper use of Botox Cosmetic, including instructing personnel that they may not represent or demonstrate that a single vial of Botox Cosmetic may be used for more than one patient or procedure. *Settlement Agreement* ¶ 56; *Mot.* 9:18-26

      *iii.    Cy Pres*

The Agreement proposes to distribute excess amounts in the Settlement Fund to the Aesthetic Surgery Foundation, the National Endowment and the American Academy. *Settlement Agreement* ¶ 55. The cy pres doctrine permits courts to put unclaimed portions of a settlement fund "to its next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (9th Cir. 2007). The Ninth Circuit has interpreted this "next best use" principle to require that cy pres distributions "account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity." *Nachsin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011); *see also Six (6) Mex. Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990). In order to satisfy the requirements of *Nachsin*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#51-53
JS-6(lc)

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11 - 9811 PSG (Ex) | Date | April 23, 2013 |
|---|---|---|---|
| Title | *Garcia v. Allergan Inc.* | | |

and *Six Mexican Workers*, cy pres distribution in a class action settlement must (1) address the objectives of the underlying statutes; (2) target the plaintiff class; or (3) provide reasonable certainty that any member will be benefited. *Nachsin*, 663 F.3d at 1039-40.

The Aesthetic Surgery Foundation is a research and philanthropic organization whose stated mission is "to identify and pursue those issues relevant to the advancement, effectiveness and safety of aesthetic surgery through directed research and education for the purpose of benefiting patients and this entire field of medicine." *Rivas Decl. in Response to Court's Jan. 10 Order* ("*Rivas Response Decl.*"), Ex. A at 1 (Dkt. # 47). The Aesthetic Surgery Foundation is the research arm of the American Society for Aesthetic Plastic Surgery, which is an organization comprised of 2,600 certified plastic surgeons, like the Plaintiff class. *Id.*, Ex. A at 2-3. As part of its work, the Aesthetic Surgery Foundation provides aesthetic and plastic surgeons, as well as the public, with safety information about cosmetic procedures, including the proper use of injectable treatments like Botox Cosmetic. *Suppl. Memo. in Response to Court's Jan. 10 Order* ("*Suppl. Memo.*") 6:25-7:2; *Rivas Response Decl.*, Ex. A at 2-3. The organization additionally conducts research on cosmetic plastic surgery and publishes the results of its studies to physicians and the public. *Suppl. Memo.* 7:2-16; *Rivas Response Decl.*, Ex. A at 4-7.

The National Endowment is a fund within the Plastic Surgery Foundation, which engages in research and development relating to plastic surgery and patient care. *Suppl. Memo.* 7:23-25; *Rivas Response Decl.*, Ex. B at 10. The Plastic Surgery Foundation works within the American Society of Plastic Surgeons, of which many plastic surgeons are members, and supports the latter organization's research and other activities. *Id.* The National Endowment specifically supports "programs directed toward defining the efficacy and safety of established plastic surgical procedures." *Id.*

Finally, the American Academy, to which 50 percent of the cy pres funds will be distributed, represents facial and plastic surgeons, whose focus is surgery of the face, head, and neck. *Suppl. Memo*. 8:8-11; *Rivas Response Decl.*, Ex. C at 21. The American Academy provides facial plastic and reconstructive surgeons with educational courses, workshops, scientific presentations, and a fellowship program. *Id.*, Ex. C at 22. The American Academy also disseminates information regarding injectables such as Botox Cosmetic to physicians and patients considering cosmetic procedures. *Id.*

Based on the mission and programs of the cy pres organizations, the cy pres distribution targets organizations that will benefit absent members of the Plaintiff class, thus putting the funds to their "next best compensation use." *See Masters*, 473 F.3d at 436. Accordingly, the cy pres distribution is proper.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#51-53
JS-6(lc)

## CIVIL MINUTES - GENERAL

| Case No. | CV 11 - 9811 PSG (Ex) | Date | April 23, 2013 |
|---|---|---|---|
| Title | *Garcia v. Allergan Inc.* | | |

B.   Claims Administration

The procedure for giving notice to Class Members, as set forth in the Agreement and ordered in the Preliminary Approval, has been carried out by professional settlement administrator BMC Group Inc. ("BMC"). *See Beckord Affidavit* ¶¶ 2, 7-10. Plaintiff expects the Claims Administration to cost approximately $100,000, *Reply* 3:8-9, and that amount will be paid from the Settlement Fund, *Settlement Agreement* ¶ 30.

On February 11, 2013, BMC sent class notices to 41,544 Class Members at their last known postal addresses, as updated by the Claims Administrator by running the names through the National Change of Address Database. *Beckord Affidavit* ¶¶ 9-10. Of the 41,544 Class Notices that were mailed, 11,585 were returned as undeliverable, *id.* ¶ 6; of those 11,585, BMC obtained updated addresses of 7,884 Class Members and Class Notice was sent to those addresses, *id.* ¶¶ 6-7. The process for obtaining additional addresses for Class Members whose Notices were returned as undeliverable is ongoing and the Claims Administrator expects to receive additional updated addresses. *Beckord Reply Affidavit* ¶ 7.

As of April 8, 2013, BMC received a total of 3,101 submitted Claim Forms, representing 3,039 unique claims. *Id.* ¶ 9. Accordingly, to date, approximately 7.3 percent of the Class has submitted Claim Forms. Plaintiff and Class Counsel expect this rate to increase, as Class Members may submit claims through May 16, 2013. *Mot.* 1:5-7. Also as of April 8, 2013, BMC received twenty-nine Exclusion Requests and no objections. *Beckord Reply Affidavit* ¶¶ 11-12.

Pursuant to the Notice Plan, BMC also set up a settlement website and phone line, both of which were made operational on February 11, 2013. *Id.* ¶¶ 12-13. Class Members may submit Claim Forms on the website and may request mailed copies of the Claim Forms via the telephone hotline. *Id.* ¶¶ 3-4. The website and phone line also provide additional information about the Agreement, and Class Members may ask questions about the Agreement via the phone line. The website has logged a total of 867 views and the telephone line has logged 256 calls. *Id.* ¶¶ 3-4.

IV.   Evaluation of the Settlement

A.   Analysis of the Fairness Factors

In evaluating whether a final class action settlement is "fair, reasonable, and adequate," the Court will consider the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#51-53
JS-6(lc)

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11 - 9811 PSG (Ex) | Date | April 23, 2013 |
|---|---|---|---|
| Title | *Garcia v. Allergan Inc.* | | |

action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See Hanlon*, 150 F.3d at 1026; *Staton v. Boeing Co.*, 327 F.3d at 960. In addition to considering these factors, the Court will also address whether the Agreement is a product of collusion among the negotiating parties. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

       *i.     Strength of Plaintiff's Case*

The first factor, which focuses on the strength of Plaintiff's case, weighs in favor of settlement. Plaintiff brings two claims: false advertising under the FAL and unfair competition under the UCL. Liability on both of these claims depends on whether reasonable physicians and licensed health care providers were deceived by Allergan's alleged representations. *Mot.* 16:3-6. Though Plaintiff believes the claims are strong and would likely succeed on the merits, legal uncertainties threaten Plaintiff's prospects of recovery. *Id.* 16:19-20.

Several hurdles and legal uncertainties threaten to impede Plaintiff's success on establishing that reasonable physicians and health care providers were deceived. First, as Plaintiff notes, reasonableness is a question of fact that will be tried to a jury, so the resolution of the issue is by nature uncertain. *Id.* 16:11-13. Further, Defendant also raises several issues that suggest that a trier of fact may not find that reasonable physicians and licensed health care providers were likely to have been deceived by Allergan's representations. For example, Defendant notes that the Class is comprised of licensed medical doctors who should be well informed of the use of Botox Cosmetic and that Botox Cosmetic vials contain a package insert stating that Botox Cosmetic is supplied "as a single patient use vial." *Def's Conf. Memo.* 1:12-19, 5:17-24. Defendant suggests that these facts weight against a finding that reasonable physicians and health care providers were deceived by the representations. Though Plaintiff contends that there is evidence of actual confusion by physicians and health care providers, *Pl's Conf. Memo.* 4:17-5:21, Defendant's arguments do suggest that Plaintiff would face some hurdles in proving his case. Further, though Plaintiff notes that the "single use" warnings were in small print and inconspicuous, Plaintiff recognizes that the labels could be used as evidence that it was not reasonable for physicians and health care providers to have relied on Allergan's representations about multiple-patient use of single-use vials. *Id.* 6:18-22. Finally, Defendant has raised the defense that multi-patient or procedure use of Botox Cosmetic vials is permissible under the off-label use doctrine, which permits a physician to use an FDA-approved drug however he or she deems appropriate in his or her medical judgment, even if such use is contrary to the directions on the label. *Def's Conf. Memo.* 6:6-16; *Pl's Conf. Memo.* 6:23-7:4. Pursuant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#51-53**
**JS-6(lc)**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11 - 9811 PSG (Ex) | Date | April 23, 2013 |
|---|---|---|---|
| Title | *Garcia v. Allergan Inc.* | | |

to the off-label use doctrine, a court may ultimately find that Defendant did nothing wrong in informing physicians and health care providers that they could use a single vial on multiple patients. *Def's Conf. Memo.* 6:6-16; *Pl's Conf. Memo.* 6:23-7:4. All of these issues potentially undermine the strength of Plaintiff's claim and so his factor favors approval.

        *ii.*    *Risk, Expense, Complexity, and Likely Duration of Further Litigation*

Formal litigation of this case through trial would be risky, expensive and lengthy, so this factor too favors settlement. If the case is litigated, Plaintiff will be required to file a motion for class certification, which Defendant will almost certainly oppose. Further, the prosecution of the case will likely include motions for decertification, summary judgment and other pretrial motions, trial, and post-trial motions. It also appears likely that litigation of this matter will require lengthy and costly discovery. *Def's Conf. Memo.* 3:1-21. For example, Defendant indicates that it expects Plaintiff will propound extensive requests for electronically-stored information and depose potentially dozens of high-ranking Allergan officials. *Id.* 3:6-9, 3:16-18. These costs would be in addition to extensive and expensive discovery that has already occurred. *Id.* 3:3-6. Further, given the potential weaknesses in Plaintiff's claims, litigation bears substantial risks to Plaintiff. Accordingly, this factor favors approval of the Agreement.

        *iii.*    *Risk of Maintaining Class Action Status Throughout Trial*

In granting preliminary approval of the Agreement, the Court conditionally certified for settlement purposes a class as follows:

> "[A]ll Physicians and Licensed Health Care Providers in the United States who purchased BOTOX® Cosmetic directly from Allergan or an Allergan-authorized distributor from April 15, 2002 through and including the date of preliminary approval of the Settlement Agreement. Excluded from the Class are Allergan, its subsidiaries and affiliates, and Allergan's agents (including its attorneys and other legal representatives) and their immediate families."

*See* Dkt. # 46 at 2 (citing *Settlement Agreement* ¶ 7). However, Plaintiff would face serious difficulties in certifying the class for trial. Defendant has indicated that it would vigorously oppose class certification and has raised several issues that could prevent certification.

In order to certify the Class for trial, Plaintiff must establish that the prerequisites of Federal Rules of Civil Procedure 23(a) and 23(b) have been met. Defendant makes a persuasive

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#51-53
JS-6(lc)

## CIVIL MINUTES - GENERAL

| Case No. | CV 11 - 9811 PSG (Ex) | Date | April 23, 2013 |
|---|---|---|---|
| Title | *Garcia v. Allergan Inc.* | | |

argument that Plaintiff will be unable to satisfy the requirements of either rule. In order to satisfy Rule 23(a), Plaintiff must "demonstrate that class members have suffered the same injury." *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (internal quotation marks omitted). In order to demonstrate that Class Members suffered the same injury, Plaintiff will need to establish that the claims "depend upon a common contention . . .[that is] of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Id.* at 2551. In *Dukes*, the Court held that the proposed class of employees had not established commonality under Rule 23(a) because the class representatives had not provided "convincing proof of a companywide discriminatory pay and promotion policy." *Id.* at 2556-57.

Defendant contends that here, too, Plaintiff will fail to establish commonality because there will likely be no evidence of a uniform, class-wide representation or policy about multi-patient use of Botox Cosmetic that was made directly to each Class Member. *Def's Conf. Memo.* 14:21-24. Defendant asserts that no such evidence has yet been produced and that Defendant believes it unlikely that such evidence will be discovered. *Id.* Defendant notes that the claims at issue are based on representations that were allegedly made by "one of hundreds of Allergan [agents] over a more than six year period at myriad different places and times." *Id.* 15:3-5. Defendant also notes that Plaintiff alone bases his claim on several different representations made to him by different Allergan agents over several years. *Id.* 15:5-10. Given that the claims appear to be based on various different representations made by different agents at different times over a lengthy period and a large geographic area, the Court concurs with Defendant that Plaintiff will face serious difficulties establishing commonality under Rule 23(a).

Defendant also notes that the reliance requirement of false advertising claims under California's UCL and FAL will likely pose serious difficulties for class certification under Rule 23(a). Defendant argues that the California Supreme Court's ruling in *Kwikset Corporation v. Superior Court*, 51 Cal. 4th 310 (2011), undercuts Plaintiff's chances of success on establishing that the commonality requirement is satisfied because it requires plaintiffs bringing false advertising claims to demonstrate actual reliance on the deceptive or misleading statements, which requires an individualized assessment of each class members' subjective response to the representations at issue. *Def's Conf. Memo* 13:3-14:20. Though *Kwikset* did not directly address class certification, Defendant contends that the case provides that different individuals may be differently situated with respect to the core theory of false advertising claims and so suggests that common issues do not predominate in false advertising actions. *Id.* 14:14-20. Though the Court need not address the merits of this argument at this time, this argument does raise another potential impediment to a finding of commonality under Rule 23(a).

Case 2:11-cv-09811-PSG-E Document 64 Filed 04/23/13 Page 10 of 18 Page ID #:957

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#51-53
JS-6(lc)

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11 - 9811 PSG (Ex) | Date | April 23, 2013 |
|---|---|---|---|
| Title | *Garcia v. Allergan Inc.* | | |

Plaintiff may also be unable to establish the requirements of Rule 23(b) for much the same reason as he will likely be unable to establish that the requirements of Rule 23(a) have been satisfied. Rule 23(b)(3) requires that common issues predominate over individual issues. Fed. R. Civ. P. 23(b)(3). For the reasons discussed in regard to commonality, above, it appears that it would be difficult for Plaintiff to show that common issues predominate over individual issues. Further, to the extent that Plaintiff may seek to rely on Rule 23(a)(2) instead of Rule 23(b)(3), it appears that he would be unable to do so because his dominant claim is for monetary relief and so every Class Member would be entitled to an individualized award of restitution. *See Def's Conf. Memo* 15:14-28 (noting that Rule 23(b)(2) does not apply to claims for monetary damages).

In sum, Defendant has raised issues that could seriously undermine Plaintiff's ability to obtain and maintain class certification and there is a serious risk that Plaintiff would be unable to maintain class action status through trial. Therefore, this factor favors approval of the settlement.

   *iv.*  *Amount Offered in Settlement*

This factor also weighs in favor of settlement approval. The total settlement amount is $7.75 million, *Settlement Agreement* ¶ 48, and Plaintiff estimates that each Class Member will receive between $228.12 and $160,368. *Reply* 3:15-21. Comparing this amount to the parties' estimate of the maximum amount of damages recoverable if Plaintiff were successful at trial, the settlement amount appears to be fair. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Based on rulings on motions so far in this case and in the related *Goldsmith* action, the only recovery available to Class Members is restitution, limited to the cost of vials that Class Members had on hand at the time they learned that single-use vials could not be used for multiple patients or procedures. *Mot.* 18:23-25. However, Plaintiff acknowledges that this amount may be further reduced if the Court were to subtract profits actually earned from use of the vials from the damages calculation. *Id.* 19:3-6. Plaintiff also recognizes that, even if successful at trial, the damages calculation could potentially result in the award to Class Members being zero. *Id.* 20:16-19.

Plaintiff estimates that the total settlement amount of $7.75 million is at least 30 percent of what Class Members would recover if Plaintiff is successful at trial. *Mot* 20:12-14. The 30 percent figure is based on Plaintiff's estimate of the maximum recovery Class Members would receive if Plaintiff is successful at trial. Plaintiff bases this figure on Class Counsel's estimate that the total potential recovery if Plaintiff is successful at trial would be $25,834,462.50. *Pl's Conf. Memo*. 9:4-50. Plaintiff reached this estimate based on Class Counsel's determination that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#51-53
JS-6(lc)

CIVIL MINUTES - GENERAL

| Case No. | CV 11 - 9811 PSG (Ex) | Date | April 23, 2013 |
|---|---|---|---|
| Title | *Garcia v. Allergan Inc.* | | |

approximately 50 units of a 100 unit vial of Botox Cosmetic are wasted when a doctor uses a single vial on only one patient or procedure. Thus, half a bottle is wasted when used on a single patient, rather than on multiple patients. Accordingly, Plaintiff asserts that Class Members would be entitled to half the cost of a vial for each vial purchased. Because each vial costs $525, Plaintiff estimates that Class Members would be entitled to restitution in the amount of $262.50 per vial. *Pl's Conf. Memo* 8:23-9:3. Plaintiff then multiplied this number by 98,417, the average number of 100-unit vials Allergan sold in 2008, to reach an estimated total recovery of $25,834,462.50. *Id.* 9:4-7.

Based on these calculations, the settlement amount is thirty percent of Class Members' best possible recovery if Plaintiff is successful at trial. However, as noted above, the damages may be reduced for several reasons, making the $7.75 million figure a much higher percentage of the potential recovery. *Mot.* 20:14-19. A settlement recovery that is 30 percent or more of the total potential recovery is adequate. *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (affirming a settlement representing 36 percent of total potential recovery); *Nicholas v. Smithkline Beecham Corp.*, No. Civ.A.00-6222, 2005 WL 950616, at *16 (E.D. Pa. Apr. 22, 2005) (approving a settlement representing between 9.3 and 13.9 percent of the claimed damages); *In re Warfarin*, 212 F.R.D. 231, 258 (D. Del. 2002) (approving a settlement representing 33 percent of the maximum possible recovery). Moreover, Plaintiff recognizes that the value of immediate recovery outweighs the possibility of future relief and that the total recovery in this case is "a remarkable result for the Class" given the obstacles and uncertainties moving forward. *Mot.* 19:7-9. Therefore, this factor favors approval.

      v.      *Extent of Discovery Completed and Stage of Proceedings*

Extensive discovery has been conducted and the parties have had ample opportunity to evaluate the merits of the case, so this factor weighs in favor of settlement approval. The parties indicate that they have engaged in significant discovery. For example, Class Counsel served subpoenas on several third parties, obtained and reviewed hundreds of thousands of pages of documents, and obtained an order compelling additional responses. *Mot.* 14:20-23; *see also Def's Conf. Memo* 3:1-6. Further, Class Counsel indicates that it conducted an extensive investigation prior to commencing the action. *Mot.* 14:17-1. Finally, the issues in the case were extensively briefed by Class Counsel in connection with motions Defendant brought in *Goldsmith*, which addressed the same claims against Allergan for the same conduct alleged in the present action. *Mot.* 6:2-24; *Def's Conf. Memo*. 9:2-10:22; *Rivas Decl.* ¶¶ 17-29. Based on the extensive discovery and motion practice in this case, as well as the parties' participation in two rounds of mediation, the parties are in a good position to negotiate settlement and now is an appropriate time to settle. Accordingly, this factor favors settlement approval.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#51-53
JS-6(lc)

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11 - 9811 PSG (Ex) | Date | April 23, 2013 |
|---|---|---|---|
| Title | *Garcia v. Allergan Inc.* | | |

### vi. *Experience and Views of Counsel*

This factor weighs in favor of settlement approval. Plaintiff is represented by attorneys from Finkelstein Thompson LLP, Kirtland & Packard LLP, and the Sill Law Group, PLLC, all of which have extensive experience litigating complex class actions. *See Parekh Decl.*, ¶¶ 4-8; *Rivas Decl.* ¶¶ 4-5 & Ex. 1; *Sill Decl.* ¶¶ 3-4 & Ex. 1. Class Counsel attest that they support the Settlement and believe that it is fair, reasonable, adequate, and in the best interests of Class Members. *Mot.* 21:24-26; *Parekh Decl.* ¶ 9; *Rivas Decl.* ¶ 43. The Court finds no reason to question the opinions of those involved in litigating and settling this case. Thus, this factor also weighs in favor of settlement approval.

### vii. *Presence of a Governmental Participant*

No government agency has participated in this lawsuit. *Mot.* 22:14-21. Therefore, this factor does not apply to the Court's analysis.

### viii. *Reaction of Class Members to the Proposed Settlement*

This factor weighs in favor of settlement approval, as Class Members have had a generally favorable reaction to the Agreement. Class Members were provided with notice of the Agreement, as discussed in Section III, B, above. *See Beckord Affidavit* ¶¶ 2, 7-10. Approximately 3,039 Class Members—or 7.3 percent of the Class—had submitted claims as of April 8, 2013, *id.* ¶ 9, and Class Counsel expect that number to increase before the May 16, 2013 deadline to file claims, *Mot.* 1:5-7. Though this percentage is relatively low, it is not so low as to prevent approval of the Agreement, as "[s]ettlements of large class action suits have been approved even where less than five percent of the class files claims." *See Six (6) Mex. Workers*, 904 F.2d at 1306. Further, also as of April 8, 2013, 29 individuals have requested exclusion. *Beckord Reply Affidavit* ¶ 11. Finally, the only objection that was filed has since been withdrawn and the objector now believes that the Agreement is fair and should be finally approved. *Rivas Reply Decl.* ¶ 2 & Ex. B. Because there was only one objection, which was subsequently withdrawn, and so few Exclusion Requests in such a large class, the final factor also suggests settlement approval is appropriate. *See, e.g.*, *In re Mego Fin. Corp.*, 213 F.3d at 459.

Case 2:11-cv-09811-PSG-E Document 64 Filed 04/23/13 Page 13 of 18 Page ID #:960

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#51-53
JS-6(lc)

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11 - 9811 PSG (Ex) | Date | April 23, 2013 |
|---|---|---|---|
| Title | *Garcia v. Allergan Inc.* | | |

*ix.    Collusion Amongst Negotiating Parties*

The Court also finds that the Agreement is free from collusion, which weighs in favor of settlement approval.  The Ninth Circuit puts "a good deal of stock in the product of arms-length, non-collusive, negotiate resolution. " *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 965 (9th Cir. 2009).  Factors indicative of collusion include "(1) when counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds . . .; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund."  *In re Bluetooth*, 654 F.3d at 947 (internal citations omitted).

As to the first factor, Class Counsel is receiving 25 percent of the Settlement Fund, which falls within the Ninth Circuit's 25 percent "benchmark" in common fund cases.  *See id.* at 942.  Further, this is not a situation in which the class received no monetary distribution but Class Counsel are amply rewarded.  The other potential indicia of collusion are also not present in this case: Class Counsel will be paid from the Settlement Fund, *Settlement Agreement* ¶ 30, and no portion of the Settlement Fund will revert to Defendant, *id.* ¶ 55.  Accordingly, the Agreement appears to be free from collusion.

B.    <u>Attorneys' Fees</u>

Trial courts have the discretion to award attorneys' fees based on a percentage of the common fund or based on the "lodestar" method.  *See In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1295 (9th Cir. 1994).  Although there is discretion, use of the percentage method is the dominant approach in common fund cases.  *E.g.*, *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) and *Six (6) Mex. Workers*, 904 F.2d at 1311).  "Under the percentage method, the court simply awards attorneys a percentage of the fund sufficient to provide plaintiffs' attorneys with a reasonable fee."  *See Wash. Pub. Power,* 19 F.3d at 1295 n.2.  The Ninth Circuit has noted that an award of 25 percent of the fund is the "benchmark," with actual awards ordinarily ranging from 20 to 30 percent.  *See Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 272-73 (9th Cir. 1989).

Under the lodestar method, the court multiplies the reasonable hours expended by a reasonable hourly rate.  *See Wash. Pub. Power,* 19 F.3d at 1295 n.2.  "The court may then enhance the lodestar with a 'multiplier,' if necessary, to arrive at a reasonable fee."  *Id.*  Considerations that may favor a multiplier in common fund cases include the complexity of the case, the risks involved, and whether payment is on a contingency basis.  *See Vizcaino,* 290 F.3d

Case 2:11-cv-09811-PSG-E Document 64 Filed 04/23/13 Page 14 of 18 Page ID #:961

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#51-53
JS-6(lc)

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11 - 9811 PSG (Ex) | Date | April 23, 2013 |
|---|---|---|---|
| Title | *Garcia v. Allergan Inc.* | | |

at 1051. Finally, "[w]hether a court applies the lodestar or the percentage method, [the Ninth Circuit] require[s] only that fee awards in common fund cases be reasonable under the circumstances." *Wash. Pub. Power,* 19 F.3d at 1295 n.2 (internal citations omitted).

Here, Class Counsel seek an award of attorneys' fees in the amount of $1,973,500, which is 25 percent of the Settlement Fund. Class Counsel contend that this amount is reasonable because it meets the Ninth Circuit's "benchmark" percentage for attorneys' fees from a common fund and is also appropriate when cross-checked under the lodestar analysis. *Att. Fees Mot.* 1:3-8.

Class Counsel contend that their request for 25 percent of the Settlement Fund is reasonable in light of the following: (1) the results achieved for the class; (2) the risk involved in litigation; (3) the skill required and the quality of work by counsel; and (4) the contingent nature of the fee; and (5) awards made in similar cases. *Id.* at 9:15-10:2 (citing *Vizcaino*, 290 F.3d at 1048 (applying similar factors in considering whether the "benchmark" percentage was warranted based on the specific circumstances of the case)). These factors all demonstrate that the attorneys' fees request is reasonable. First, as discussed above, Class Counsel has obtained an excellent result for Class Members, especially given the significant difficulties Plaintiff would face prevailing on the merits. Second, given that Class Counsel took the action on a contingent basis when other firms declined to do so, *see Sill Decl.* ¶ 9; *Rivas Decl.* ¶ 48, and that the litigation required extensive work on complex and unsettled legal issues, Class Counsel incurred substantial risk in taking on the case. Similarly, given the complex nature of the case and the positive results for Class Members, the skill and quality of work required by Class Counsel also supports approving the fee award. Finally, Class Counsel has demonstrated that the amount is consistent with or lower than fees and costs awarded in class actions involving similar claims and settlements. *Att. Fees Mot.* 14:9-22 (citing several cases in which similar fee awards were approved). For all these reasons, a fee award of 25 percent of the Settlement Fund is reasonable.

The reasonableness of a percentage-based fee award of 25 percent is additionally supported by a lodestar cross-check. Attorneys from three law firms—Finkelstein Thompson LLP, Kirtland & Packard LLP, and the Sill Law Group PLLC—collectively spend more than 5,240 hours on the case. *Att. Fees Mot.* 16:8-9. Counsel's work on this matter included investigating potential claims, analyzing legal issues, drafting complaints, opposing motions, conducting discovery, analyzing data, engaging in settlement negotiations, creating the settlement documents, settlement-related briefing, and speaking with Class Members. *Att. Fees Mot.* 16:8-13; *Rivas Decl.* ¶¶ 7-44. Class Counsel expect to spend additional time on the matter, including time spent responding to Class Member inquiries, providing supplemental information

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#51-53
JS-6(lc)

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11 - 9811 PSG (Ex) | Date | April 23, 2013 |
|---|---|---|---|
| Title | *Garcia v. Allergan Inc.* | | |

required by the Court, responding to objections, if any, preparing for the fairness hearing, and continuing to work with the Claims Administrator. *Rivas Decl.* ¶ 45. Class Counsel submitted itemized billing statements showing the total number of hours worked on the matter and the billing rates for each attorney. The fees for the hours worked results in a collective lodestar of $2,649,175.75. *Att. Fees Mot.* 16:7. The amount is significantly higher than the amount requested by Class Counsel.

In light of Class Counsel's extensive work on this case, use of a fair percentage benchmark, and lodestar cross-check, $1,973,500 is a reasonable award.

C. Costs

Class Counsel additionally requests $92,064.72 for costs incurred in pursuit of the litigation. These costs include mediation fees, Pacer document retrieval, photocopying, travel, and various other expenses. *See Parekh Decl.* ¶ 38; *Rivas Decl.* ¶ 54; *Sill Decl.* ¶ 50. In light of the extensive time Class Counsel spent litigating the case for over two years, these costs are reasonable.

D. Enhancement Award to Representative Plaintiff

Plaintiff requests an award of $7,500 as an enhancement award for his service on behalf of the Class. *Incentive Award Mot.* 3:4. This amount represents .097 percent of the total Settlement Fund. *Id.* at 7:18-20. In evaluating whether an incentive award is appropriate, courts should consider the following factors: (1) the actions the plaintiff took to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; (3) the duration of the litigation and the amount of time and effort the plaintiff expended in pursuing the action; and (4) the risks to the plaintiff in commencing the litigation. *Staton*, 327 F.3d at 977. Further, courts consider whether the incentive award is proportional to the total settlement and the amount other class members receive. *Id.* at 973. Plaintiff contends that the incentive award of $7,500 is reasonable in light of these considerations.

The first three factors all favor granting the requested incentive award to Plaintiff. Plaintiff has been involved in this litigation for over two years, beginning in approximately September 2010. *Garcia Decl.* ¶ 4. Plaintiff became involved with the litigation before he was named as the sole plaintiff in the action and has been actively involved in the litigation efforts since that time. *Id.* ¶¶ 3-6. Plaintiff's actions on behalf of the class include, but are not limited to: meeting with Class Counsel to provide information that was used in amended complaints in the *Goldsmith* action; providing documents, factual information, and marketing materials used

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#51-53
JS-6(lc)

## CIVIL MINUTES - GENERAL

| Case No. | CV 11 - 9811 PSG (Ex) | Date | April 23, 2013 |
|---|---|---|---|
| Title | *Garcia v. Allergan Inc.* | | |

by Class Counsel in preparing the Complaint in this action; reviewing the Complaint; corresponding with Class Counsel and conferring with counsel on several separate occasions; and participating in settlement negotiations, including making himself available during mediation and reviewing the settlement order. *Id.* ¶¶ 3-12; *Rivas Decl.* ¶ 59. Class Counsel contend that Plaintiff's participation was vital to the successful settlement of the case. *Id.* ("If it were not for his efforts, this settlement may never have been achieved."). Plaintiff also exposed himself to various risks by participating in the litigation, particularly exposing himself to risks of harming his business relationships with pharmaceutical companies and his professional relationships in his practice area. *Garcia Decl.* ¶ 17. Accordingly, the final factor also favors granting the incentive award.

Further, the incentive award is well within the range of incentive awards frequently approved by courts in the Ninth Circuit, both in terms of the total amount and the percentage of the total Settlement Fund. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463 (approving an incentive award that was .56 of the total settlement amount); *Espinoza v. Domino's Pizza, LLC*, No. EDCV 07-1601-VAP (OPx), 2012 WL 5462550, at *4 (C.D. Cal. Nov. 7, 2012) (approving an incentive award of $10,000); *Sandoval v. Theraldson Emp. Mgmt., Inc.*, No. EDCV 08-482-VAP (OPx), 2010 WL 2486346, at *10 (C.D. Cal. June 15, 2010) (approving a $7,500 incentive award, which comprised 1 percent of the gross settlement amount).

Considering Plaintiff's contributions as class representative and the amount of the award, an incentive award of $7,500 is reasonable.

V.    Pleadings Submitted Pursuant to the Court's January 31, 2013 Order

  A.    Confidential Memoranda

Both parties submitted confidential memoranda that adequately detail their assessments of the case and its value. These memoranda satisfy the instructions set forth in the Court's Order.

  B.    Attestations from the Parties/Copies of Any and All Agreements

Per the Court's order, the parties and attorneys submitted attestations stating that there are no separate deals between the parties and that the Settlement is the only agreement between the parties involved. *See* Dkts. # 56-57.

  C.    Attestations from the Parties Regarding Any Connections to the *Cy Pres*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#51-53
JS-6(lc)

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11 - 9811 PSG (Ex) | Date | April 23, 2013 |
|---|---|---|---|
| Title | *Garcia v. Allergan Inc.* | | |

Organizations

Per the Court's order, the parties submitted attestations stating that they have no connection to the cy pres organizations. *See* Dkts. # 55 & 57.

D. Memorandum Justifying Award of Attorneys' Fees

Per the Court's order, Plaintiff filed a motion for order for attorneys' fees and Expenses. *See* Dkt. # 53.

E. Memorandum Justifying Plaintiff's Incentive Award

Per the Court's order, Plaintiff a motion for an order granting the incentive award. *See* Dkt. # 51.

VI. Conclusion

On balance, the settlement appears to be fair to the Class. Moreover, the Court finds that Plaintiff's requests for attorneys' fees, litigation costs, and a class representative enhancement award is reasonable. Thus, the settlement appears to be fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2). For the foregoing reasons, Plaintiff's motion for final approval of settlement is **GRANTED**. Accordingly, it is HEREBY ORDERED AS FOLLOWS:

1. The Court approves settlement of the action, as set forth in the Settlement Agreement, as fair, just, reasonable, and adequate. The parties are directed to perform their settlement in accordance with the terms set forth in the Settlement Agreement;

2. Consistent with the Settlement Agreement, this action is dismissed on the merits and with prejudice. All Class Members who did not opt out shall be bound by the release contained in the Settlement Agreement and the judgment in this action;

3. Class Counsel are awarded $1,937,500 in attorneys' fees and are ordered to be reimbursed for costs in the amount of $92,064.72;

4. Plaintiff Julio Garcia is awarded $7,500 as a class representative enhancement award for his services in bringing and prosecuting this matter. The Court finds that this amount is warranted and reasonable for the reasons set forth in the moving

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#51-53**
**JS-6(lc)**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11 - 9811 PSG (Ex) | Date | April 23, 2013 |
|---|---|---|---|
| Title | *Garcia v. Allergan Inc.* | | |

papers before the Court;

5. The Claims Administrator is authorized to disburse funds from the Settlement Fund pursuant to the terms of the Settlement Agreement and this Order.

**IT IS SO ORDERED.**